right thereto by producing the evidence of their owner-ship before the cattle inspector, before the same are sold. He should have the right to institute and maintain a suit-able action for their recovery, and, as before seen, the statute should require notice to him for that purpose.

It is a matter of regret that we are compelled to de-clare this act unconstitutional. It is a matter of common knowledge that the most effective way and the method most largely practiced in this state to effectuate the lar-ceny of cattle is to separate calves from their mothers; thus destroying all means of identification and proof of ownership by the true owner. The fact remains, however, that the law must be enforced as it is found to exist, and the remedy lies with the legislative department to enact a suitable statute on this subject.

For the reasons stated, the judgment of the court below will be affirmed; and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.

---

[No. 1838, June 28, 1916.]
[On Motion for Rehearing, September 4, 1916.]
## MILLIKEN v. MARTINEZ et al.

### SYLLABUS BY THE COURT.
1. A bill of exceptions must be filed in the office of the clerk of the district court, and the fact of such filing should be shown by the transcript of record on appeal. P. 63

2. Where one appeals from a judgment adverse to him in a cause in which he has intervened, he cannot complain of irregularities in the judgment entered against the principal defendants therein, and must rely upon errors solely preju-dicial to himself, and cannot take advantage of errors preju-dicial to others. P. 66

3. Under section 42, Code 1915, where any sheep, bovine cattle, or other animals are received from the owner, under a written contract for the herding or caring for the same

for pay or on shares, or in any other manner, except by absolute purchase, such animals, together with the increase and product thereof at all times, and until the full completion of such contract according to its terms, remain the property of such owners, so letting them out to be herded or cared for. Hence, under a "partido" contract, which calls for the return of a like number and kind of animals, at the expiration of the contract, the original animals and their increase remain the property of the original owner until the full completion of the contract, and the person having such animals in charge has no power to sell or dispose of the same until after his title has vested, by full completion of the contract according to its terms, or "by express consent of the owner of such animals."

P. 66

4. Where the evidence introduced in support of facts is of a conclusive character and is not controverted by other evidence, the court in instructing the jury may assume that such facts are true.

P. 68

Appeal from District Court, Colfax County; T. D. Leib, Judge.

Action by Jennie Milliken against Juan C. Martinez and wife, in which John King intervened. From the judgment, intervener appeals. Affirmed.

O. T. TOOMBS of Clayton and J. LEAHY of Raton, for appellant.

MORROW & ALFORD of Raton and E. P. DAVIES of Santa Fe, for appellees.

### OPINION OF THE COURT.

ROBERTS, C. J.—This action was originally instituted in the court below by the appellee Jennie Milliken, against Juan C. Martinez and Juanita B. Martinez, in replevin, to recover the possession of 1041 head of ewes.

The complaint was based upon section 4340, Code 1915, which gives to any person having a right to the immediate possession of any goods or chattels wrongfully taken, or wrongfully detained, the right to bring an action in replevin for the recovery thereof and for damages sustained by reason of the unlawful caption or detention thereof. A writ of replevin was issued, by virtue of which the sheriff seized and took possession of 746 head of ewes, described in the complaint and writ.

Thereafter John King, by leave of court first granted, intervened in the cause and alleged that he was the owner of and in possession of said ewes at the time they were levied upon by the sheriff. King gave a forthcoming bond and took poossession.

Martinez and wife filed a general denial to plaintiff's complaint. Plaintiff denied the allegations of ownership and possession by King.

The cause was tried to a jury, which returned a verdict in favor of the plaintiff, and on said verdict judgment was rendered in favor of the plaintiff and against 'he defendants and intervener, wherein the plaintiff wr awarded the possession of the sheep taken by virtue of the writ of replevin as against the defendants and intervener, and a money judgment against the defendants for other sheep which were not found in the possession of the defendants, the recovery of which were sought by the complaint.

From this judgment the defendants and intervener jointly prayed an appeal, which was granted by the trial ఁourt. King filed a supersedeas bond, but the defendants filed neither a supersedeas nor a cost bond, and did not join in the bond filed by King. Upon motion, because of such default, the appeal was dismissed as to the two defendants; hence King, the intervener, is the sole appellant.

[1] The appellee has filed a motion to strike the purported bill of exceptions from the transcript of record, because it is not shown, either by recital in the transcript or by the certificate of the clerk of the district court, that

such purported bill of exceptions was ever filed in his office. That the bill of exceptions must be filed in the office of the clerk, and that the record should so show, was held by this court in the case of City of Tucumcari v. Belmore, 18 N. M. 331, 137 Pac. 585. In a recent case (Baca v. Board of County Commissioners of Guadalupe County et al., 158 Pac. 642), this court has pointed out the proper method of showing the filing of the transcript of testimony and bill of exceptions, and suggested the use by clerks of the district courts of the form of certificate set forth in Wade's Appellate Procedure, § 441. Before filing the transcript of record with the clerk of this court, the attorney for appellant should see to it that it is properly prepared and certified, thus avoiding all objections in this regard. As this case must be affirmed on the merits, we have decided to treat the bill of exceptions as properly a part of the record; hence will not further consider appellee's motion to strike the same.

The facts necessary to be stated may be briefly summarized as follows:

The defendants since the year 1905 had sheep of the intervener, John King, under what is called a "partido contract." Some time after 1910 John Milliken, the husband of the appellee, also let sheep to the defendants under a similar contract. Mr. Milliken died prior to the 25th day of October, 1914, the exact date not being material, and Mrs. Milliken, the plaintiff, upon that date entered into a written contract with the defendants by which she let to them on "partido" 1,041 head of ewes for the period of one year, she to receive a stipulated amount of wool and a given number of lambs, the defendants agreeing to deliver to her, at the expiration of the stated term, the same number of sheep so received by him and of the same age as those received. During the winter of 1913 the defendants lost some 500 head of sheep by reason of heavy snow, and in October, 1914, they had but few over 1,000 left out of the King and Milliken sheep, numbering something over 2,000 originally.

In October, 1914, and prior to the expiration of the time stated in the contract, Mr. Doherty, the son-in-law of Mrs. Milliken, acting under directions from Mrs. Milliken, went to the Martinez range and demanded of Mr. Martinez possession on behalf of Mrs. Milliken of the sheep which she had let to him. Martinez told him to take the sheep, and Mr. Doherty and his assistant went to the corrals and commenced cutting out sheep marked with the ear marks mentioned in the written contract. After having cut out some over 100, Mr. Martinez appeared and told him that sheep bearing another brand than the one mentioned in the contract also belonged to Mrs. Milliken; that he had branded them with the named brand, by direction of Mr. Milliken, who had supplied him with the branding iron. Doherty then, with Martinez's consent, cut out all bearing the named brands. While they were at work, or soon thereafter, Mr. King, the intervener, appeared, and asked Doherty to permit Martinez to keep the sheep for another term, in order that he might be able to increase the flock and protect all parties. Doherty replied that the matter would have to be taken up with his principal, and consented to leave the sheep in the possession of Martinez until Mrs. Milliken could be communicated with. Immediately afterwards, and before any of the parties had left the premises, King notified Martinez that he claimed all the sheep, under his "partido" contract, and Martinez, so he testified, told King that he would let him have them. Thereupon King gave Martinez a written release from all liability under the "partido" contract between them. Thereupon King took possession of the sheep or put his agent in charge of them, so he testified, and turned them loose upon the "open" range. Mrs. Milliken then filed her complaint in replevin for the sheep, which her agent had separated from the common herd, and which bore the brand stated by Martinez to be the brand of her late husband.

The brief filed in behalf of appellant, the intervener, was prepared and filed jointly on behalf of the intervener and defendants, and discuss many errors assigned which could only affect the rights of the defendants, who, as

stated, are not before this court. The questions thus presented will not be considered.

[**2**] "Where one appeals from a judgment adverse to him in a cause in which he has intervened, he cannot complain of irregularities in the judgment entered against the principal defendants therein, and must rely upon errors solely prejudicial to himself, and cannot take advantage of errors prejudicial to others." Meadors v. Brown (Ky.) 29 S. W. 325. Many other authorities to the same effect might be cited, but the proposition is so elementary that further citation would be useless.

[**3**] The principal contention of appellant, King, presented in divers ways, by objecting to the introduction of evidence, motion for a directed verdict, and objections and exceptions to instructions, is that, because the "partido" contract executed by and between Mrs. Milliken and the defendants provided for the return, not of the identical sheep let under the contract, but of the same kind, quality, and number, Mrs. Milliken had parted with all her right, title, and interest in and to the sheep let by her, and the increase thereof. This question, however, is settled adversely to this contention by section 42, Code 1915, which reads as follows:

"When any one has or shall receive from the owner thereof any sheep, bovine cattle, horses or other animals under written contract, for the herding or caring for the same for pay or on shares, or in any other manner, except by absolute purchase, such sheep, bovine cattle, horses or other animals, together with the increase and product thereof at all times, and until the full completion of such contract according to the terms thereof, shall be and remain the property of the said owner or owners, so letting them out to be herded or cared for; and the person or persons so receiving the same for such purpose shall have no authority or right to sell, transfer, mortgage, or dispose of the same, or any part thereof, in any manner whatever without the express consent of the owner or owners thereof; and when a copy of any such contract shall be filed with the county clerk, as provided in the preceding section, it shall be notice to every one that the person or persons in charge of such animals, sheep, cattle or horses, had no right to sell or dispose of the same in any manner."

Under this section, it will be observed that, where any sheep, bovine cattle, horses, or other animals are received from the owner, under a written contract for the herding or caring for the same for pay or on shares, or in any other manner, except by absolute purchase, such sheep or other animals, together with the increase and product thereof at all times, and until the full completion of such contract according to the terms thereof, shall be and remain the property of the said owners so letting them out to be herded and cared for. Hence, under a "partido" contract which calls for the return of a like number and kind of animals at the expiration of the contract, the original animals and their increase remain the property of the original owner until the full completion of the contract, and the person having such animals in his charge has no power to sell or dispose of them until after his title thereto has vested, by full completion of the contract according to its terms, or "by express consent of the owners." And section 1620, Code 1915, makes it a felony for a person to knowingly buy such animals without the written consent of the owner of such animals. It is not contended here that defendants either had such written consent, or that the contract had been completed according to its terms; hence there is no merit to this contention.

Objection is urged by intervener to the action of the court in overruling the demurrer interposed by the defendants to the complaint. Waiving the right of intervener to object, we see no error in this, as the complaint contains every allegation required by the statute (section 4340, Code 1915), and the affidavit in replevin was pursuant to the form prescribed by section 4355, Code 1915. A complaint in replevin which alleges all the facts required by statute to sustain the right is sufficient to withstand a general demurrer.

Appellant, King, by assignment of error No. 5, complains of the first instruction given by the court, and in the trial court objected to the giving of this instruction, upon the ground that it was a comment upon the weight of the evidence. In this instruction the court attempted to state the issues between the parties, saying in part:

"The plaintiff replevined 746 head of sheep, as shown by the undisputed proof herein."

[4] That the plaintiff did replevin the stated number of sheep was shown by the sheriff's return, and no evidence was introduced which contradicted the same. The rule in this regard is stated in 38 Cyc. 1667, as follows:

"Where the evidence introduced in support of facts is of a conclusive character and is not controverted by other evidence, the court in instructing the jury may assume that such facts are true. It has been held that this principle is especially applicable where the evidence introduced is documentary or record evidence."

Hence there is no merit in the point made against the instruction in the trial court. Grounds of objection other than those urged in the trial court will not be considered.

Many objections are urged to the few instructions given by the court, but no one of the points made is meritorious, and to consider them in detail would unduly lengthen this opinion, without benefit to the profession. Practically all of the objections urged relate only to the rights of the defendants, who are not here complaining, but, even were they before the court asking relief, we would be compelled to hold that there was no reversible error in giving the same.

Appellant, King, requested the court to give an instruction to the effect that, if the Milliken sheep had become intermingled with the sheep owned by King, with Milliken's consent, then the burden was upon Milliken to show that the sheep taken by her were her sheep. That the fact that all the sheep which she took under the writ of replevin were either the original sheep let to Martinez or their increase was not disputed by either the defendants or the intervener; hence there was no impropriety in refusing this instruction.

Upon the trial the intervener proceeded upon the erroneous theory that the appellee had parted with title to the sheep in question by virtue of the terms of the "partido" contract, because by such contract she was not to receive, at the expiration of the same, the identical sheep

let, but a stated number of like kind and ages. Under the plain provisions of the statute this was not true; hence many of the questions urged need not be further considered.

Many objections are urged to the action of the court, either in excluding evidence proffered by the defendants and intervener, or in admitting evidence over objection, tendered by the plaintiff. We have examined and have carefully read appellant's brief, but no error on the part of the court, nor any point made in this regard is of sufficient merit to justify a discussion of the same.

The intervener argues, at some length, alleged error on the part of the court in refusing to submit to the jury special interrogatories which he requested, but, if there was any error on the part of the court in so refusing, the intervener has failed to make such alleged error available here, because he saved no exception to the action of the court in this regard.

On the whole, we believe the cause was fairly tried, and the evidence fully sustains the verdict, and the judgment of the trial court will be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.

## ON MOTION FOR REHEARING.

ROBERTS, C. J.—Appellant, King, contends that he should be granted a rehearing herein because the court erroneously construed the testimony given by James Doherty, in that we held that Doherty testified that Martinez told him to take the sheep. Upon a review of the evidence we find that we were mistaken in assuming that this testimony applied to the first demand made by Doherty for possession of the sheep. This statement by Martinez was not made at that time, but subsequently, when the levy was made by the deputy sheriff. But this is wholly immaterial for two reasons:

First, the testimony given by Mr. Martinez is to the effect that at the time of the first demand by Doherty for possession of the sheep with Martinez's consent the sheep were rounded up and inclosed in a corral, and while so con-

fined Martinez took both King and Doherty to the corral and said to them:

"Gentlemen, there is your sheep. Do whatever you want with them. I have not got enough to turn over. You can handle them as you want."

. The sheep held by Martinez under "partido" contract with King and Mrs. Milliken bore separate brands, and this action on the part of Martinez could only be construed as a delivery of the sheep to the parties and a termination of the contract under which he held them; hence there could be no merit in appellant's contention that under the terms of the contract Mrs. Milliken was not entitled to possession of the sheep, assuming that the contract had not been breached.

The second answer to the contention is that Doherty testified that he had made demand upon Martinez for the sheep belonging to Mrs. Milliken, but, if we assume, as does appellant, that the contract had not terminated, and Mrs. Milliken had no right to the possession of the sheep at the time the demand was made, appellant is met by the proposition, according to his own evidence and that of Martinez, that Martinez had delivered to King possession of the sheep in fulfillment of his "partido" contract with King. In other words, he had turned over to King, not only the King sheep, but all of the Milliken sheep, to make good the loss out of the King flock. This amounted to a conversion of the Milliken sheep which he held under his "partido" contract, which rendered a demand unnecessary. Kitchen v. Schuster, 14 N. M. 164, 89 Pac. 261. This view of the case renders wholly immaterial the fact as to whether Martinez had taken possession of the sheep prior to the bringing of the action herein and before King attempted to exercise dominion over them.

It is next insisted that the court in some manner overlooked the evidence as to the levy upon the sheep in question made by the deputy sheriff; his contention being that the deputy sheriff did not actually levy upon all of the sheep in question, because after he had separated

123 head of sheep from the flock he was called away and left instructions that Doherty, who was present, proceed and separate the remainder of the sheep, which Doherty did. He argues that Murray, being only a deputy sheriff, could not deputize Doherty to act. But this matter was rendered wholly immaterial by reason of the fact that appellant, King, executed a forthcoming bond and took possession of the sheep.

"Any irregularity in a levy made under a writ of replevin is cured by defendant giving a bond to return the property." 34 Cyc. p. 1356.

No other ground in the motion merits consideration, and it will therefore be denied; and it is so ordered.

HANNA and PARKER, J.J., concur.

[No. 1858, May 1, 1916.]
[On Motion to Dismiss Motion for Rehearing, Sept. 4, 1916.]
CULP et al. v. SANDOVAL.